UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re:

RODRIGUEZ INVESTMENTS, LLC,

Debtor.

Case No. 19-00207-GS
Chapter 11

**MEMORANDUM DECISION DENYING MOTION FOR RECONSIDERATION**

T. Edward Williams, counsel for the debtor, seeks reconsideration of the court's Order Granting United States Trustee's Motion for Disgorgement and Turnover (Order) (ECF No. 79) that requires Mr. Williams to turn over $22,577.00 to the debtor's principal. For the reasons set forth below, the court will deny the request for reconsideration.

A.   **BACKGROUND**

The United States Trustee (UST) filed its Motion for Disgorgement and Turnover of Retainer (Motion to Disgorge) on September 16, 2019. ECF No. 47. The Motion to Disgorge is supported by a declaration from the debtor's principal, Kisha Smaw (Smaw Declaration), and addresses the debtor's retention of Mr. Williams to file and represent it within the debtor's chapter 11 proceeding in Alaska. Mr. Williams is a New York attorney who practices in both New York and Colorado. His practice focuses on litigation and bankruptcy. Mr. Williams filed bankruptcy for the debtor Rodriguez Investments, LLC, on July 1, 2019. He filed his employment application on July 12, 2019, and disclosed:

> Williams, LLP has requested a retainer of $21,000.00 in the preparation and filing of the within Chapter 11 bankruptcy. Debtor expects to satisfy this amount soon, and, T. Edward Williams, in compliance [with] AK LBR 2016-1(e)(1)[A]-[B], will deposit that amount in a separate trust account and will give notice under AK LBR 2016-1(e)(2)[A]-[B] of its disbursement.

ECF No. 13, at 3. The UST objected to Mr. Williams's employment. ECF No. 28.

On July 24, 2019, the debtor filed schedules and a statement of financial affairs. ECF No. 26. In response to Question 11 regarding payments related to bankruptcy made by the debtor or a person acting on behalf of the debtor within the year before the filing of the case, the debtor marked the box for "None." *Id.* at p. 5.

On August 1, 2019, the court entered its Order (1) Requiring Debtor's Counsel to Associate with Local Counsel and (2) Setting Hearing on Application to Employ to associate with local counsel in time for the continued meeting of creditors scheduled for August 21, 2019. ECF No. 41.

It was not until August 7, 2019, that Mr. Williams filed his Disclosure of Compensation of Attorney for Debtors. ECF No. 34. In it, Mr. Williams certified that he agreed to accept $21,000.00 for his representation of the debtor. Mr. Williams further disclosed that he had received the $21,000.00 *prior* to the filing from the debtor. *Id.* at pp. 1-2.

Mr. Williams failed to associate with local counsel as required. Instead, at a hearing on his Application to Employ, Mr. Williams elected to withdraw his employment application. The court then entered an order denying his employment as counsel for the debtor-in-possession as withdrawn. ECF No. 50. The UST filed its Motion to Disgorge that same day.

The Smaw Declaration filed in support of the Motion to Disgorge details a number of pre- and post-petition transfers from Ms. Smaw to Mr. Williams to fund his retainer. ECF No. 51. Ms. Smaw paid Mr. Williams's law firm through PayPal using her credit cards as follows:

| Date | Credit Card | Amount |
|---|---|---|
| June 25, 2019 | Mastercard | $ 1,020.00 |
| June 28, 2019 | Visa | $ 4,000.00 |
| July 12, 2019 | Mastercard | $ 8,577.00 |
| July 22, 2019 | Visa | $ 2,500.00 |
| July 26, 2019 | Mastercard | $ 2,500.00 |

| Date | Credit Card | Amount |
|---|---|---|
| Aug. 1, 2019 | Mastercard | $ 2,500.00 |
| Aug. 9, 2019 | Mastercard | $ 2,500.00 |
| **Total Paid** | | **$23,597.00** |

The UST sought turnover of the above payments for Mr. Williams's legal services, arguing that the funds were property of the bankruptcy estate to which Mr. Williams had no prior claim or interest in light of the denial of his employment as counsel for the debtor-in-possession.

The hearing was originally set for October 8, 2019, but Mr. Williams moved to continue the hearing. ECF No. 57. Mr. Williams also sought to strike the Smaw Declaration based on equitable estoppel, and raised his intention to use matters covered by the attorney-client privilege as part of his defense. ECF Nos. 58-59. The court declined to summarily strike the Smaw Declaration and left it for Mr. Williams to develop in his opposition to the Motion to Disgorge. ECF No. 63. The court granted the continuance, but held a status and scheduling conference to discuss the motion on October 8, 2019. *Id.* Mr. Williams appeared telephonically, but he had to leave shortly after the hearing commenced. As a result of the hearing, the court required Mr. Williams to provide the documents he wanted to use at the evidentiary hearing on the Motion to Disgorge to Ms. Smaw's counsel and set another hearing to consider the attorney-client privilege issues. ECF No. 66.

At the continued hearing held on October 18, 2019, the court heard from all interested parties including Mr. Williams. At this hearing, David Bundy appeared as personal counsel for Ms. Smaw individually. ECF No. 72. By this time, Mr. Williams had placed another of Ms. Smaw's businesses, Hearts and Hands of Care, Inc. (Hearts and Hands), into chapter 11 as well. Hearts and Hands had retained counsel from Seattle, Thomas Buford, to represent it as debtor-in-

possession, and moved within the instant case to dismiss the bankruptcy. ECF No. 52. Mr. Buford also participated telephonically in the October 18, 2019 hearing. ECF No. 72.

Mr. Bundy advised the court that he had not received the documents as required by the court's prior order, though he had been talking with Mr. Williams. Mr. Williams advised the court that he could email the documents to Mr. Bundy by the following Monday, October 21, 2019. After considerable discussion regarding the appropriate manner to evaluate any attorney-client privilege, Ms. Smaw offered to waive the privilege to resolve the issue. To accommodate review of Mr. Williams's documents to be offered, and the matters they concerned, the court gave Mr. Bundy until October 23, 2019, to file a written objection to disclosure of the documents or the information involved. *Id*. The court was clear, however, that based upon Ms. Smaw's representation during the hearing, it deemed the privilege waived by Ms. Smaw subject to her timely filing an objection to preclude the express waiver. Absent any written objection from Ms. Smaw, through Mr. Bundy, the attorney-client privilege was deemed waived. In light of the waiver, the court scheduled additional briefing with Mr. Williams to file his opposition by October 28, 2019. The court set the Motion to Disgorge for evidentiary hearing on November 5, 2019, at 1:30 p.m. Alaska time but did not issue a written order detailing the deadlines or the date of the evidentiary hearing. *Id*.

Mr. Bundy did not file any objection to the waiver of the attorney-client privilege. As a result, the privilege was waived by Ms. Smaw on behalf of the debtor.

On October 29, 2019, Mr. Williams filed his opposition to the Motion to Disgorge. ECF No. 73. The opposition explains that Ms. Smaw had retained Mr. Williams to investigate fraud relating to various hard money loans that had resulted in judgments against the debtor. *Id.* at p.

4

1. Mr. Williams stated that he concluded the fraud claims had no merit, and recommended that Ms. Smaw, or her companies, proceed with bankruptcy. Ms. Smaw was unwilling to proceed with bankruptcy and paid him $1,020.00 via PayPal for his time billed on the fraud claims. *Id*. at p. 2.

According to Mr. Williams, a couple of days later Ms. Smaw contacted him to explore bankruptcy for the debtor. But according to Mr. Williams, Ms. Smaw also informed him that she did not intend to "see the bankruptcy through, but wanted to declare bankruptcy to gauge the response of some of the hard money lenders." *Id*. at p. 3. Mr. Williams said that Ms. Smaw continued to negotiate with her creditors, and the "[d]ocuments and other information necessary for moving the Rodriguez Investments LLC's bankruptcy forward were not forthcoming until mid-July 2019." *Id*. Nonetheless, the debtor filed its bankruptcy on July 1, 2019.

As to payment for his services, Mr. Williams explained in his opposition:

> On July 16, 2019, the undersigned spoke with Ms. Smaw and indicated they would have to discuss because no one would believe the bankruptcies were real based on the amounts she had previously paid. Because Ms. Smaw had lost her daughter who was the inspiration for her going into business and because Ms. Smaw had also lost her father at the time, she and the undersigned were having this conversation, the undersigned thought it would be impolite to request money from Ms. Smaw. Consequently, instead of asking Ms. Smaw for money, the undersigned and Ms. Smaw agreed that Ms. Smaw would come up with $21,000.00 at a later date.

*Id*. Mr. Williams argues that "[b]ecause the Debtor made no payment, there is no payment to disgorge." *Id*. Rather he argued that the debtor was to make payments to him in the future.

Mr. Williams's opposition references a declaration from him filed in support of the opposition, but no declaration was included, or filed contemporaneously with, the opposition.

5

Similarly, the opposition refers to attached exhibits, but no exhibits were included, or filed contemporaneously, with the opposition.

On the date of the hearing, November 5, 2019, Mr. Williams did file a declaration. ECF No. 75. The declaration largely tracks the factual statements made in Mr. Williams's opposition, including that Ms. Smaw agreed that the debtor would file for bankruptcy fully intending to dismiss the case at a later date. *Id.* at p. 2. Mr. Williams also stated that Ms. Smaw did not pay him for filing the petition and did not sign his Engagement Agreement until August 2019. *Id.* Mr. Williams further stated that in August 2019, Ms. Smaw agreed to pay him $21,000 in total for filing three bankruptcy cases including the debtor's case. *Id.* at p. 3. He said that Ms. Smaw never paid him that amount. *Id.* Yet, Mr. Williams also stated in his declaration that PayPal took substantial fees out of Ms. Smaw's payments, including "$249.03 from the pre-bankruptcy invoice paid by Ms. Smaw in the amount of $8,577.000. Other amounts paid by Ms. Smaw was [sic] subject to the same fees." *Id.* Additionally, Mr. Williams noted that "other amounts paid to the undersigned was [sic] subject to costs such as printing and copying costs, legal research costs, and other similar costs incurred in representing Rodriguez Investments, LLC." *Id.*

The court conducted the evidentiary hearing on the Motion to Disgorge on November 5, 2019. *See* ECF No. 47. Mr. Williams appeared by telephone. ECF No. 78. The assistant UST and Mr. Buford, appearing on behalf of Hearts and Hands, had traveled to Anchorage from Seattle to appear at the hearing and present evidence. *Id.* The UST called and examined Ms. Smaw and introduced six exhibits into evidence, including PayPal receipts from Ms. Smaw totaling $23,597.00 as previously described in her declaration. The UST also admitted into

evidence the Engagement Agreement between the debtor and Mr. Williams dated June 23, 2019, that Mr. Williams says was not signed until August 2019.

After approximately one hour of telephonic participation, Mr. Williams disconnected from the call. The court unsuccessfully attempted to reconnect with Mr. Williams. There is no evidence that Mr. Williams attempted to call into the court after he was disconnected. The hearing then proceeded without Mr. Williams's continued participation. The next day, Mr. Williams filed a notice advising the court that he had been attending the hearing from an airport lounge in La Guardia Airport and his phone had overheated. ECF No. 76.

On November 13, 2019, the court entered the Order, and set forth factual findings based on the evidence including the detail of the monies Ms. Smaw had paid to Mr. Williams through PayPal. Of that $23,597.00, the court found that $22,577.00 was paid to Mr. Williams for bankruptcy services, including the filing of the debtor's bankruptcy case and representation within the bankruptcy.[1] Because Mr. Williams was not employed as counsel for the debtor, he was ineligible to seek compensation for bankruptcy services. It necessarily follows that since the court had not approved Mr. Williams's employment, no fee application was ever submitted and no payments for his services were ever approved. In short, Mr. Williams should be holding the $22,577.00 in his firm's trust account pending further order of this court. For these reasons, the court concluded that Mr. Williams had no right to continue holding the funds paid to him as a retainer and was required to turn those funds over to Mr. Bundy pending further court order.

---

[1] The court accepted that the initial payment of $1,020.00 was for legal services related to the fraud investigation rather than for representation of the debtor in bankruptcy.

On November 25, 2019, Mr. Williams filed his Motion to Reconsider November 13, 2019 Order (Motion to Reconsider).  ECF No. 81.  Mr. Williams argues that the Order is manifestly unjust, because (1) it "in effect acts as a default judgment against the undersigned," *id.* at p. 3:15-16, and (2) was entered after Ms. Smaw invoked the attorney-client privilege, hampering Mr. Williams's ability to defend himself against the relief requested in the Motion to Disgorge.  Mr. Williams also contends that the court committed errors of fact, namely (1) the court made no findings about the amounts of the payments made by Ms. Smaw, and (2) the figure the court stated Mr. Williams was paid does not account for $686.41 in PayPal fees or $550.00 incurred for legal research costs.

The UST opposed the Motion to Reconsider (Objection).  ECF No. 90.  Mr. Williams has filed his reply (Reply).  ECF No. 91, as amended at ECF No. 92.  Neither the Motion to Reconsider, nor the Reply, included any exhibits or declarations.  However, attached to a proposed order on the Motion to Reconsider, Mr. Williams included a PayPal transaction history reflecting the challenged payments.  ECF No. 85.  The transaction history matches the dates and amounts of payments from Ms. Smaw to Mr. Williams's law firm, though it also includes fees deducted by PayPal and the net amount received by the law firm.

On January 13, 2020, the court entered its order taking the Motion to Reconsider under advisement, noting that no party requested oral argument.  ECF No. 93.

**B.    ANALYSIS**

"A 'motion to reconsider' does not exist under the [Fed. R. Bankr. P.] and, when so asserted, it is treated as a motion under Fed.R.Civ.P. 59(e) made applicable by Fed. R. Bankr. P. 9023."  *Wallace v. Hayes (In re Wallace)*, 2013 WL 782721 at *2 (Bankr. D. Idaho Feb. 27,

2013) (citing *Hanson v. Finn (In re Curry and Sorenson, Inc.)*, 57 B.R. 824, 826–27 (B.A.P. 9th Cir. 1986)).  A timely motion under Civil Rule 59(e) "tolls the time within which to file a notice of appeal of the underlying order until the order on reconsideration is entered."  *Fadel v. DCB United LLC (In re Fadel)*, 492 B.R. 1, 18 (B.A.P. 9th Cir. 2013).  Because the Order was entered on November 13, 2019, the Motion to Reconsider filed on November 20, 2019, was timely and is treated as a motion to alter or amend under Rule 59(e).

"Since specific grounds for a motion to amend or alter [a judgment] are not listed in [Fed. R. Civ. P. 59(e)], the [trial] court enjoys considerable discretion in granting or denying" a motion under Fed. R. Civ. P. 59(e).  *Allstate Ins. Co. v. Herron,* 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1254 n.1 (9th Cir. 1999)).  The Ninth Circuit has instructed that "altering or amending a judgment under Rule 59(e) is an 'extraordinary remedy' usually available only when (1) the court committed manifest errors of law or fact, (2) the court is presented with newly discovered or previously unavailable evidence, (3) the decision was manifestly unjust, or (4) there is an intervening change in the controlling law."  *Rishor v. Ferguson*, 822 F.3d 482, 491-92 (9th Cir. 2016) (citing *Herron*, 634 F.3d at 1111); *see also Smith v. Clark County School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993)) ("A district court may properly reconsider its decision if it '(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'").  Absent "highly unusual circumstances," a motion for reconsideration should be denied if the above test is not satisfied.  *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  Finally, "[a] Rule 59(e) motion may not be used to raise arguments or present evidence

9

for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citing *389 Orange Street Partners,* 179 F.3d at 665).

    1.    <u>The Court's November 13, 2019 Order is not Manifestly Unjust</u>

Mr. Williams has asserted two bases for reconsideration based on manifest injustice: (1) the Order "in effect acts as a default judgment against the undersigned," ECF No. 81, p. 3:15-16, and (2) was entered after Ms. Smaw invoked the attorney-client privilege. "With respect to 'manifest injustice' various courts have observed the following:

> There is no judicial consensus ... but several courts have applied the *Black's Law Dictionary* definition, which states that 'manifest injustice' is an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds. A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

*FTI Consulting, Inc. v. Sweeney (In re Centaur, LLC)*, 2019 WL 2122952, at *3 (Bankr. D. Del. May 13, 2019) (quoting *New Jersey Dept. of Environmental Protection v. Occidental Chemical Corp. (In re Maxus Energy Corp.)*, 571 B.R. 650, 655 (Bankr. D. Del. 2017)); *see also In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) ("A 'manifest injustice' is defined as an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds.").

Although Mr. Williams cites multiple cases in favor of his argument regarding manifest injustice, he does not explain how those cases mandate a finding that the Order constitutes

10

indisputable error.  For the reasons stated below, the court concludes that the Order is not manifestly unjust.

        a.        <u>The Entry of the Order is Not a De Facto Default Judgment</u>

In his Motion to Reconsider, Mr. Williams argues that "[t]he Court's order in effect acts as a default judgment against the undersigned notwithstanding that the undersigned has actively participated in this case without issue."  ECF No. 81, at p. 3:15-17.  The Order is not a default judgment.  Mr. Williams was afforded the opportunity to oppose the Motion to Disgorge, and he did so.  He raised arguments, including the attorney-client privilege, and attended hearings in furtherance of resolution of the Motion to Disgorge.  While late-filed, he *did* file a declaration in support of his opposition.  Moreover, he participated in the evidentiary hearing and was permitted to appear telephonically at that hearing rather than travel to Anchorage, Alaska in a bankruptcy case that he undertook to represent the debtor.  Mr. Williams's cell phone was disconnected after more than an hour of his participation in the November 5, 2019 hearing.

Mr. Williams failed to fully participate for the duration of the evidentiary hearing. This is not an instance of default judgment. *See generally FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995); *In re Hampton*, 272 B.R. 1, 3 (Bankr. D. Wyo. 2001).  Mr. Williams assumed the risks when he chose to appear telephonically at a long-standing evidentiary hearing.  Moreover, there is still no explanation for why Mr. Williams did not attempt to contact the court to rejoin the proceeding after dropping the call.  Mr. Williams's active participation in this matter precludes his argument that he was defaulted.  The Order was entered based on the merits of the Motion to Disgorge, after consideration of Mr. Williams's opposition presented up to the point that he failed to participate in the hearing.

11

> b.     Ms. Smaw's Alleged Invocation of the Attorney-Client Privilege is Not Grounds for Reconsideration

Mr. Williams contends he was prevented from fully presenting his opposition because Ms. Smaw sent him an email invoking the attorney-client privilege, thereby precluding key information regarding Mr. Williams's fees. ECF No. 81, at p. 2. According to Mr. Williams, based upon Ms. Smaw's email, and possibly through comments with her counsel as well, he decided not to disclose information to the court. He posits that his decision was made in part because the court's discussion of the attorney-client privilege vis-a-vis Ms. Smaw at the October 18, 2019 hearing in this matter was "not clear as to what happens when Ms. Smaw submits an objection" to the disclosure of protected information directly to Mr. Williams rather than the court. *Id.* at p. 4:25-26. Mr. Williams further argues that it would have been "imprudent" for him to rely on the audio recordings for clarity regarding his professed conundrum. *Id.* at p. 5:2-4.

The court is unpersuaded by Mr. Williams's arguments. First, he has not provided any evidence in support of his statements regarding Ms. Smaw's alleged desire to invoke the attorney-client privilege. He has failed to provide a declaration to support his Motion to Reconsider, and has failed to attach the email from Ms. Smaw. In short, the court has not been provided with any evidence that Ms. Smaw objected to the waiver of the attorney-client privilege as to any documents whatsoever. The court is left with mere argument from Mr. Williams that is insufficient to establish a question of manifest injustice.

Even if the court were to credit Mr. Williams's argument despite the absence of evidence, the court does not share Mr. Williams's professed confusion concerning Ms. Smaw's waiver of the attorney-client privilege. Rather, at the October 18, 2019 hearing the court made it clear that the attorney-client privilege was waived unless Ms. Smaw, acting through Mr. Bundy, filed a

written objection to the materials Mr. Williams produced. Ms. Smaw did not file a written objection. As a result, she waived any attorney-client privilege with Mr. Williams.

Finally, equally problematic for Mr. Williams is that he failed to raise the issue in the opposition he filed after the purported email from Ms. Smaw. Mr. Williams also failed to mention the problem in the declaration he later submitted, or during the one hour that he attended the evidentiary hearing. Mr. Williams responds that it would have been improvident to rely upon audio recordings of the hearing and the court's discussion of Ms. Smaw's waiver of the attorney-client privilege. First, Mr. Williams attended the October 18, 2019 hearing, and raised no questions concerning the court's construction of the debtor's waiver of the attorney-client privilege. *See* ECF No. 78. But Mr. Williams then states in the Reply in a parenthetical that "[i]ndeed, the audio recordings do not mention Mr. Smaw's husband, on whose behalf service was also rendered."[2] ECF No. 92, at p. 5:4-5. This statement strongly suggests that Mr. Williams listened to the audio recordings, which are available to the public from the case docket. He is charged with the knowledge of the court's conclusion that Ms. Smaw waived the attorney-client privilege subject to her personal counsel filing a written objection by October 23, 2019.

No such written objection was filed, and the privilege was waived. The court rejects any confusion on Mr. Williams's part, especially in light of his failure to timely raise the matter. In sum, Mr. Williams's arguments concerning any confusion as to the applicability of the attorney-client privilege ring hollow. He had every opportunity to raise any issues concerning the waiver

---

[2] To the extent that Mr. Williams is now asserting that Ms. Smaw's husband also controlled the waiver, the court rejects this contention. The client was Rodriguez Investments, LLC. Ms. Smaw is identified as the sole member and manager of Rodriguez Investments, LLC. ECF No. 26, at 13. Ms. Smaw controlled the attorney-client privilege. Mr. Bundy conceded this point during the October 18, 2019 hearing.

13

of the privilege prior to entry of the Order. He did not. His failure to previously raise this issue precludes any finding that the court's ruling was "so patently unfair and tainted that the error is manifestly clear to all who view it."

    2.    <u>The Court Did Not Commit Manifest Errors of Fact</u>

"Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith*, 727 F.3d at 955 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). In the Ninth Circuit, the tests for manifest injustice and manifest error are largely the same. *See Greenspan v. Fieldstone Financial Management Group, LLC,* 2018 WL 4945214, at *6 (D. Or. Aug. 22, 2018) (quoting *Oak Park*, 302 B.R. at 683) ("Notwithstanding that the commonly understood meanings of the words making up the phrase 'manifest injustice' suggest that manifest injustice would occur only when a party suffers clear and significant prejudice to or impairment of a protected right or interest, in fact the courts of the Ninth Circuit generally treat 'manifest injustice' as very nearly synonymous with 'clear error,' defining manifest injustice as any 'error in the trial court that is direct, obvious and observable, such as a defendant's guilty plea that is involuntary.'"). "Within the Ninth Circuit, courts...have looked to *Black's Law Dictionary*, stating that [a] manifest error of fact...law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the...credible evidence in the record.'" *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012) (quoting *Black's Law Dictionary* 563 (7th ed. 1999)) (internal citations and quotations omitted).

Mr. Williams argues that the court committed manifest errors of fact with regard to (1) the amounts of the payments received by Mr. Williams from Ms. Smaw, and (2) the expenses

14

Mr. Williams incurred in the course of his representation of the debtor. Again, the court points out that these arguments could have been raised before the Order was entered. In fact, as to the payments made by Ms. Smaw, Mr. Williams did raise the issue. Even now, the transaction history he has provided confirms the dates and gross amount Ms. Smaw paid to Mr. Williams's law firm. Moreover, the court did not disregard the evidence presented by Mr. Williams with regard to the amount of the payments made by Ms. Smaw. Instead, the court weighed the evidence presented and found it unpersuasive. Mr. Williams's "disagreement with the Court's determination is not grounds for seeking reconsideration." *Lopez v. Cate*, 2012 WL 1969050, at *2 (E.D. Cal. May 31, 2012) (quoting *U.S. v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001)).

Mr. Williams continues to suggest that part of the funds received from Ms. Smaw were paid in satisfaction of work performed for her and her husband. Ms. Smaw did admit that the initial payment of $1,020.00 was paid for investigation of the debtor's fraud claims prior to her decision to put the debtor into bankruptcy. She has testified, however, that the balance of the payments were to be for bankruptcy services. To this day Mr. Williams has failed to state what services were provided to Ms. Smaw and her husband individually. Rather, in his Motion to Reconsider, he simply states in a parenthetical that the "payments of $4,000.00 and $8,577.00 were paid in satisfaction of [$]12,577.50 - which was for work performed for Ms. Smaw and her husband." ECF No. 81 at p. 4. This statement is insufficient on reconsideration when Mr. Williams had every opportunity to set forth his position within his opposition and declaration. Moreover, the court notes that engagement letters and billing records are generally not subject to

15

attorney-client privilege. *Clarke v. Am. Comm. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *In re Hotels Nevada, LLC,* 458 B.R. 560, 576 (Bankr. D. Nev. 2011).

  Mr. Williams also argues that the court has committed clear errors of fact by not reducing the total amounts of the transfers. He argues that the total amount must be reduced by $550.00 for expenses paid to Bloomberg Law Legal Research from the $8,577.00 payment. Mr. Williams failed to raise this matter in his opposition or declaration. Rather, he raises the issue for the first time in the Motion to Reconsider. More importantly, Mr. Williams has provided no evidence in support of any payment to Bloomberg Law Legal Research. And to the extent this charge is for services provided to the debtor, no compensation has been approved. For these reasons, the court cannot reduce the amount to be disgorged by the $550.00 Mr. Williams states was paid to Bloomberg Law Legal Research.

  Finally, Mr. Williams argues that the court must at least deduct the fees PayPal deducted from the transfers. The fees for the six transfers at issue total $656.53 according to Mr. Williams. Mr. Williams has attached what appears to be a transaction history from PayPal as part of the documents filed with the Motion to Reconsider. And again, the court has reviewed Mr. Williams's opposition and declaration. Neither document mentions that the PayPal amounts should be reduced for fees deducted. Fundamentally, the court could not have committed clear error as to the amounts of the transfers because Mr. Williams never raised the issue or placed any evidence before the court to establish the deductions from the PayPal payments. Similarly, Mr. Williams did not object to the admission of the PayPal documents submitted by the UST as evidence of the funds transferred to Mr. Williams, which did not include any deductions but simply recited the amount sent to his firm. Even now, there is no declaration or affidavit to

16

authenticate the document. In short, he has failed to establish a clear error of fact or that the court's decision was manifestly unjust.

**C.    CONCLUSION**

For the reasons stated above, the court will issue a separate order denying the Motion to Reconsider November 13, 2019 Order. (ECF No. 81).

DATED: March 10, 2020

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  T.E. Williams, Esq.
        K. Perkins, Esq.
        U.S. Trustee
        ECF Participants per NEF